COURT OF APPEALS OF VIRGINIA


Present:    Chief Judge Fitzpatrick, Judges McClanahan and Haley
Argued by teleconference


JACOB THOMAS MATTOX
                                                            OPINION BY
v.        Record No. 1882-04-3              JUDGE ELIZABETH A. McCLANAHAN
                                                          OCTOBER 11, 2005
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
                              Charles J. Strauss, Judge

        Glenn L. Berger (Berger & Thornhill, on briefs), for appellant.

        Stephen R. McCullough, Assistant Attorney General (Judith
        Williams Jagdmann, Attorney General, on brief), for appellee.


        Jacob Thomas Mattox, a juvenile, was convicted of felony hit and run, reckless driving,

and assault and battery.[1]  He appeals his commitment and sentence as a "serious offender" under

Code § 16.1-285.1.  For the reasons that follow, we affirm the decision of the trial court.

                                    I.  BACKGROUND

        Lieutenant Ronald B. Henry, a game warden with the Virginia Department of Game and

Inland Fisheries, dressed in his boat duty uniform, was at a marina to conduct boat patrols.

Henry noticed an ATV, operated by Mattox, moving at a rapid speed.  Henry shouted to Mattox,

requesting him to stop.  Henry was concerned that Mattox would hurt someone because he was

driving the ATV at a rapid speed near a large crowd.  After Henry requested Mattox to stop,

Mattox raised his left hand and extended his middle finger as he drove away.  After this

encounter, Mattox told an acquaintance that he "flipped . . . off" a game warden and that he was

_____

        [1] Mattox was indicted for malicious wounding, but found guilty of assault and battery.

going to "piss . . . off" the game wardens. Mattox told another witness that he was "not worried about them mother f---ers" looking for him, referring to the game wardens.

Later that afternoon, Henry heard Mattox's ATV and attempted to stop Mattox. Mattox initially slowed down, and Henry began to approach Mattox. When Henry was within five or six feet, Mattox accelerated and attempted to elude Henry. Henry ran along the road near a circular path to cut off Mattox. Henry stopped in the path of the ATV, gestured for Mattox to stop by extending both hands with his palms outward, and shouted "stop." Mattox did not stop, but instead accelerated and drove directly toward Henry. Mattox's ATV struck Henry, causing him to suffer a concussion, lacerations to the back of his head, a broken leg, a punctured hand, an injury to his other hand that required eight stitches, and many cuts and bruises to his legs and arms. After the collision, Mattox drove away without rendering any aid to Henry.

Mattox returned to the scene of the incident later that afternoon. He told the investigating trooper that the brakes on the ATV did not work. The trooper confirmed that the foot brake was inoperable; however, the hand brake worked properly when he tested it.

At sentencing, Mattox produced numerous witnesses who testified about his law-abiding character, peacefulness, remorsefulness, good reputation in the community, positive behavior while in juvenile detention pending sentencing, the availability of juvenile treatment programs, and his amenability for treatment. The presentence report reflected that Mattox had no prior criminal history. It also noted that his last reported grades were one C and five Fs. When in the detention facility, Mattox had one B and four As, and won five awards for most studious, team player, citizenship, best all around, and best attitude. A clinical psychologist conducted an evaluation of Mattox and found no mental deficiencies. He concluded that Mattox was "capable of making good social judgments."

When the trial court sentenced Mattox, it acknowledged that "there is a side of him that is very considerate, very respectful." However, the court noted that Mattox's act against Henry was "willful" and "not an accident." The court stated that he did not "try to swerve, didn't try to hit his brakes, did nothing, and then after he hit the officer, looked back and saw the officer lying in the road." The court found Mattox had no respect for authority. The court considered that Mattox severely injured Henry and that his actions were "so horrendous" and "atrocious" that he should be declared a "serious offender."

## II. ANALYSIS

On appeal, Mattox contends that he was a person of good character, had no prior criminal record, had not committed a felony punishable by a 20-year confinement, had responded well to local juvenile detention, and according to his witnesses, would have benefited from local juvenile programs. Mattox argues that the evidence was not sufficient for the trial court to conclude that "the needs of the juvenile would clearly best be served by commitment as a serious offender" and, therefore, the trial court erred in sentencing him as such under Code § 16.1-285.1. In reviewing the sufficiency of the evidence, "we are required to view the evidence in the light most favorable to the Commonwealth." Suleiman v. Commonwealth, 26 Va. App. 506, 512, 495 S.E.2d 532, 535-36 (1998).

Code § 16.1-285.1(A) was amended in 2001, and language was added providing an alternative qualification for a juvenile to be committed as a "serious offender." Prior to this amendment, our decision in Suleiman was the seminal case addressing Code § 16.1-285.1, the commitment of serious offenders. However, the Suleiman holding was based on the first paragraph of Code § 16.1-285.1(A) and Code § 16.1-285.1(B).[2] We consider for the first time

---

[2] The amendment to Code § 16.1-285.1(B)(1)-(3) does not change the rationale employed in Suleiman. For this reason, we find that Suleiman, as it relates to these portions of the statute, still controls for purposes of this appeal.

since the 2001 amendment, the second paragraph of Code § 16.1-285.1(A).  This paragraph

allows a circuit court to commit a juvenile as a serious offender if the court finds "the needs of

the juvenile and the interests of the community would clearly best be served by commitment."

In making this determination, the court is to consider "the commitment criteria set forth in

subdivisions 1, 2, and 3 of subsection B as well as other components of the juvenile's life

history."  Code § 16.1-285.1(A).

Code § 16.1-285.1(B) provides, in pertinent part,[3]

> [p]rior to committing any juvenile pursuant to this section, the
> court shall consider . . . [t]he juvenile's age[,] . . . [and] . . . [t]he
> seriousness and number of the present offenses, including (i)
> whether the offense was committed in an aggressive, violent,
> premeditated, or willful manner; (ii) whether the offense was
> against persons or property, with greater weight being given to
> offenses against persons, especially if death or injury resulted; . . .
> and (iv) the nature of the juvenile's participation in the alleged
> offense.

In addition, the "commitment order must be supported by a determination that the interests of the

juvenile and community require that the juvenile be placed under legal restraint or discipline and

that the juvenile is not a proper person to receive treatment or rehabilitation through other

juvenile programs or facilities."  Code § 16.1-285.1(B).

In this case, the court's factual findings satisfy the requirements of both the second

paragraph of Code § 16.1-285.1(A) and Code § 16.1-285.1(B), and "constitute evidence that the

court made the required determination[s]" pursuant to those statutes.  Suleiman, 26 Va. App. at

511, 495 S.E.2d at 535.  The court received evidence that when Lieutenant Henry told Mattox to

"stop," he extended his middle finger at Henry, and then made certain Henry saw it as Mattox

drove away.  Soon thereafter, Mattox stated that he was going to "piss . . . off" the game wardens

---

[3] Code § 16.1-285.1(B)(3) addresses "[t]he record and previous history of the juvenile,"
and Code § 16.1-285.1(B)(4) considers "[t]he Department's estimated length of stay."

and referred to the game wardens as "mother f---ers." Mattox later went back to the area where Henry was located, and after being told to "stop," he accelerated and drove away from Henry as Henry approached the ATV. Mattox then deliberately drove the vehicle directly toward Henry, accelerating speed as he approached on the ATV. Mattox struck Henry with the ATV, left the scene immediately, and never offered Henry assistance.

In sentencing appellant, the court emphasized the seriousness of the offense. The court found Mattox's action of driving the ATV into a game warden and causing serious injury was a "horrendous act any way you characterize it." Mattox "was totally disrespectful" and "totally disregarded authority." The court noted it was "a willful offense against the officer," and "not an accident." The court stated that Mattox "did nothing to avoid the officer," he "didn't try to swerve," he "didn't try to hit his brakes," he "did nothing." The court observed that "after he hit the officer, [he] looked back and saw the officer lying in the road." Mattox fled the scene, leaving the injured officer unaided and unattended. Only hours later did he return to the scene of the incident.

It is clear from the record that the court considered Mattox's age, the aggressive, violent and willful manner in which Mattox struck Henry, that the offense was committed against a person, the extensive injuries suffered by Henry, and that Mattox was the sole participant in the crime. The court also noted that the "question is what sort of rehabilitation" and "what sort of punishment" Mattox needs. The court concluded that it had considered the serious offender statute and stated "the only thing appropriate [for Mattox] would be the serious offender program." The court then sentenced Mattox under that statute. We find these considerations "reflect[] the court's implicit determination that [Mattox] is not a proper person for non-incarceration juvenile treatment." Suleiman, 26 Va. App. at 512, 495 S.E.2d at 535; Code § 16.1-285.1(B). "[W]hether appellant was a proper person to receive treatment or rehabilitation

through non-incarceration programs is a question of fact, and we may not reverse a court's finding of fact unless it is plainly wrong or without evidence to support it." Suleiman, 26 Va. App. at 512, 495 S.E.2d at 536 (citations and internal quotations omitted).

Accordingly, we find that the court considered the factors in Code § 16.1-285.1(B) as well as other components of Mattox's life history and determined that "the needs of the juvenile and the interests of the community would clearly best be served by commitment."[4] Code § 16.1-285.1(A).

### III.  CONCLUSION

Finding no abuse of discretion by the trial court in sentencing Mattox as a "serious offender" under Code § 16.1-285.1, we affirm the decision of the trial court.

Affirmed.

---

[4] "To the extent [Mattox's] argument encompasses a claimed requirement that the court must make detailed findings *in writing*, we disagree, provided the record discloses that all the statutory factors have been considered and the required determination has been made." Suleiman, 26 Va. App. at 511 n.1, 495 S.E.2d at 535 n.1 (referring to Code § 16.1-285.1(B)).